The Judges of the United States Courts of Appeals Hear ye! Hear ye! The United States Courts of Appeals for the Sixth Circuit is now in session. All persons having business before this honorable court, draw near, give attention, and ye shall be heard. God save the United States and this honorable court. Please be seated. We're very pleased and privileged to be here. I want to thank Chief Judge Hood for letting us use this historic courtroom as well as letting us have an argument here during a time that hopefully is one of upswing for Detroit. And I think it's even more special that we have with us this morning truly an iconic judge from the District Court Bench, Judge Avram Cohn, and we thank him for his assistance and his wisdom as we work through these cases. The clerk may call the first case. 1536A, Clifton v. O'Nunwar v. Connie O. Moore v. O'Rourke, oral argument not to exceed 15 minutes per side. Mr. Lazarus v. Clifton O'Nunwar Thank you and good morning, your honors. Jeff Lazarus, Federal Public Defenders on behalf of the appellant Clifton O'Nunwar. I would like to reserve three minutes for rebuttal if I may. Sure. Your honor, in this case the District Court erred in finding procedure of the fault as Ohio Appellate Rule 9 is neither well established nor regularly enforced. Can we have the microphone a little closer? As Ohio Appellate Rule 9 is neither well established nor regularly enforced and we request this court vacate the order denying our habeas petition and remand. Mr. O'Nunwar was convicted of murder, aggravated murder in the state of Ohio and sentenced to life without parole. It was a very circumstantial case based on not so compelling evidence. Well, I mean, I don't know if you really want to get into that, but there was some pretty incriminating evidence it would seem, you know, handing shell casings to his neighbor while they're searching the crime scene, that kind of thing. That's correct, your honor, and Mr. O'Nunwar found his mother's body undisputably hours and hours after the murder. What he did was clearly a lapse in judgment. I can't even begin to understand the irrational acts that someone would take when they find their mother's body. But again, that's the facts, and we never got to that because of the merits review, which takes us to our procedural default issue. Now, state post-conviction counsel conducted a full investigation revealing that trial counsel was constitutionally ineffective in failing to request Mr. O'Nunwar's cell phone records, despite him specifically asking his trial counsel to do so. And these records showed some exculpatory evidence that was presented to the state trial court. He was unable to get relief, and when he proceeded in federal habeas, the district court in this case found there was procedural default, finding that because he failed to, quote, furnish the transcripts, that the court never got to the merits of the case and found it was defaulted under Maupin. The district court was in error, as Ohio Appellate Rule 9 is neither well established nor regularly enforced. Well, how is it not well established when the Ohio Supreme Court, it seems flatly held, that it is the appellant's duty to send the trial transcript to the court of appeals rather than the trial court's duty to do that? That was Knapp with the Ohio Supreme Court case from 1980. And Strickland itself I think is only a few years younger than Knapp. That's correct. I think in truth that Knapp helps us. In Knapp, the Ohio Supreme Court said that the trial counsel had requested the transcripts, but they were never furnished. They were never actually transcribed. And the court then sent it back. They did not dismiss the appellant's case. Well, that's because they had requested them. They had tried to comply, but the court reporter was sick for like 13 months. That's correct. And in this case, Mr. O'Nunwar already did a state direct appeal. And in doing that direct appeal, he had requested the transcripts. They had been furnished. They were in the record. Then when he went to postconviction, he presented a motion, and the state judge denied it without a hearing, made no reference to the transcript. And then on appeal, his appellate counsel filed an appeal simply to the fact of whether there was evidence to deny the postconviction. There was no hearing, therefore no transcripts were actually required. Well, but, I mean, it seems like you're arguing a point of state procedural law at this point. I mean, the Ohio courts, you know, it's their prerogative to interpret 9b as they have. It was the Ohio Court of Appeals' prerogative to apply it consistent with NAP. I mean, how are we able to say either of those things is somehow improper as a matter of federal law? Well, this court has a duty to determine whether the Ohio rule is well-established or regularly enforced. And I'll direct this court to a case in which this court held, Ray v. Holland, which is 230 F. 3rd, 1359, in which this court looked at Tennessee's appellate rule requiring a petitioner to file the transcripts. This court looked at Tennessee law and said, we have all these Tennessee law cases that say that this is a well-established and regularly enforced law. And, therefore, this court found that it was well-established and regularly enforced under the Maupin test. This court has not held the same. I thought in this Gonzalez v. Wolf case, unpublished, I believe, that our court held that 9b, Ohio rule, is, you know, established and applied and all that. Well, Gonzalez was, much like NAP, was procedurally very different. In Gonzalez, the defendant or petitioner had a mistrial and then on direct appeal failed to attach the transcript from that previous trial. He also failed to attach any exhibits. Therefore, that transcript was never even prepared. But, I mean, didn't our court in that case say that the rule itself is established and applied in Ohio? Under those facts. Well, I mean, this question we're asking is not specific to a particular case and how it applies in a case. It's, right, I mean, this part of the test, whether it's established, et cetera, I forget the terminology we're talking about, is something, it's just whether that rule is regularly enforced or not. It doesn't turn on whether somebody did something or not in that particular case. And in Gonzalez, our court said it is regularly enforced. Isn't that a fair description of what we said? It is correct in an unpublished opinion. Right, so it's unpublished, so it's not binding. But we asked this court to consider the history and the fact that Mr. O'Nunwar had, in fact, had the transcripts transcribed and they were in the record and they were actually in the courthouse. So, counsel, let me just get this straight. He had an appeal and then he filed his post-conviction motion. Do I understand the law correctly that in such circumstances the trial judge then gets the transcript from the appellate court and they share it when you have a post-conviction motion? Isn't there a statute that governs what the court shall consider in a post-conviction motion and it includes the reporter's transcript? That's correct. Ohio Revised Code 2953.21, Ohio's post-conviction statute, deals with the procedures in which a trial court is supposed to assess the post-conviction petition. And in that statute, it says that the court shall consider the trial transcript. Now, this all leads us to understand why Attorney Cunliffe, who is the state's – Counsel, so how does the trial court get it? Physically? Because state court isn't like federal court where we have the ECF and everything is accessible online. The actual courthouse has the bound transcripts. And it's my understanding that the trial judge is supposed to request that they be brought over. Now, Judge First's order does not actually address any – make any citations to the transcript. Therefore, one can believe that maybe the trial transcripts remained in the appellate court. I'm not aware of that, but the specific facts of that were. I do know that Attorney Cunliffe did make – have a reasonable basis to believe that the trial transcripts were part of the record as she had previously done state post-conviction appeals where she had not physically attached the transcripts and it was never an issue. And those are noted in her motion to reconsider at page ID 1609. So it's unclear whether the trial judge got the record? That's correct. But the trial judge was required to get the record. We believe so. We believe that's the understanding of Ohio case law, yes, or the statute. And that brings me to a point that – You're filing the request for the transcript, right? That's correct. And that's done by a precipice? Is that correct? That's my understanding in a traditional appeal. The trial counsel didn't do that? In this case, no. Because she believed that it was there anyway. Correct. And we asked the court to consider Attorney Cunliffe's efforts after the case was dismissed on appeal. In fact, she did a motion to reconsider in which she included an affidavit, and we've attached those to our petition. Her motion to reconsider set forth cases that she had done previously where this was not an issue. And I would direct Your Honor, Judge White, to a previous opinion that you wrote in Hill v. Carlton in which you concurred on an issue of procedural default. And you said in that case that when a petitioner does everything in his power to present the issues to the state court, it was troubling when there was procedural default. And this brings us to an issue that assuming – which we will not concede – but assuming that this rule is well established and regularly enforced, then Attorney Cunliffe's error, the simple error of failing to file the precipice or attach the transcript, constitutes cause and prejudice. And this cause and prejudice is a defense to procedural default. How is that true when you're talking about Martinez now? Well, Martinez is somewhat different in its procedural posture because it talks about an effective assistance from counsel. I mean, first, I understand your point about procedural default and sort of the injustice of it is what you're implying. That said, it's a doctrine we have to apply when it's applicable. Now, Martinez says if the lawyer is ineffective in the initial post-conviction proceeding, initial, then that ineffectiveness is cause and – help me. Prejudice to the default. For a default in whatever the procedural bar is. But here it's not the initial proceeding. It's the appellate proceeding, right, in post-conviction. So Martinez by its terms doesn't apply. And in that instance, why doesn't Coleman, to which Martinez is an exception, why doesn't the Supreme Court's decision in Coleman bind us here? Martinez, the facts before the case were whether the initial post-conviction counsel was ineffective, and that was cause and prejudice. That was before the court. The court has not been faced with a whether post-conviction appellate counsel's ineffectiveness is procedural default. And it is a matter of equity. It is a matter of what we're trying to get to, which is whether Mr. O'Nunwar should be faulted because his lawyer made a mistake. Sure, and that's what happens in procedural default. I mean, it's troubling, but that's kind of what happens. Well, but it is a violation of constitutional rights, and we have a Sixth Amendment right to counsel. It doesn't make sense that we can say – But Coleman says there is no Sixth Amendment right to counsel in post-conviction proceedings, and Martinez says, okay, we'll recognize an exception for the initial proceeding, and that's the problem we have. I mean, Coleman otherwise says there isn't a right. So the stage we're talking about now, I mean, I'm just trying to give you a chance to tell me why this is wrong, would seem to be one where there is no right, Sixth Amendment right to counsel. It's wrong because the guidepost is equities, that we're trying to look at what's there. The Sixth Amendment interpretation is equity? In Martinez. Martinez talks about equity. That's a pretty broad reading in Martinez to say – We're talking about fairness, not equity. Well, it is – may I finish as I see my time is expired? Yeah, sure. Go ahead. We can't have it both ways. We can't say Ohio Appellate Rule 9 is so well-established and regularly enforced that Eternally Cunliffe was absolutely objectively wrong, but on the other hand, we can't consider the fact that she made reasonable efforts to point out her mistake, and that this mistake just falls to the defendant. Because of that, we ask this court to consider vacating the district court's order denying the petition and remand. Thank you very much. Thank you. You'll have your rebuttal. We'll hear from Mr. Corey. May it please the Court, Jonathan Corey for the respondent, Apple Lee Warden. The district court correctly denied appellant's petition for habeas relief. Appellant's claims were procedurally defaulted because of his failure to comply with a firmly established and regularly followed state procedural rule.    I'm sorry. I'm sorry. I'm sorry. Are there any published cases that apply this rule in a post-conviction setting? Yes, Your Honor. Well, aside from Knapp. Knapp is in post-conviction. Oh, I'm sorry. Regarding post-conviction, there are two cases, one from 1998 and one from 2002. Let me find it. I do have some. State cases you're talking about? Pardon? These are state cases? These are state. These are from the 8th Appellate District, the district where this post-conviction petition came from. And these were both actually pro se appeals of petitions for post-conviction relief. And in both these situations, 9B and Knapp were applied. And do we know whether the transcripts had been filed in those cases on the direct appeal? Your Honor, I'm not sure if they were. But I know in the instance of the post-conviction petition, the reviewing court said that without the necessary transcripts, they weren't able to address the assigned errors. But we don't know whether they were there in some. We don't know that they were filed previously on direct appeal. Your Honor, I'm not sure if they were filed on direct appeal. Do you dispute that there are times when the court seems to get it on their own? I mean, first of all, let me ask you, do you agree that when there's a post-conviction proceeding, it's the trial court that is responsible for getting the transcripts, assuming that they've been produced? Well, pursuant to 2953.21, during the initiation of the petition for post-conviction relief, the trial court does need to review the transcripts when they are making an initial determination as to what their substantive grounds for relief. Okay, and the trial court just does that proactively, right? Like, I'm asking, the defendant doesn't say, here's the transcripts. It's there because there's been an appeal. So the court gets it. I believe so. So why is it then that if it's something that the court has a duty to procure, why is counsel's interpretation – I mean, it seems to me that if that's the case, it's plausible what she's saying, that in many cases you don't file it because they have it. Wouldn't it go up with the record? No, it wouldn't, Your Honor. For the simple fact that 9B applies to appeals in all types of proceedings, the Ohio Rules of Appellate Procedures, specifically 9B, have been applied to all types of cases. Obviously, the petitions for post-conviction relief that were appealed that I just brought up, but a quick search and you'll find many, many cases in this 8th Appellate District where 9B was applied on different types of appeals, 2015 cases, 2012, 2011. Well, do you dispute counsel's account that she's had appeals where she relied on the fact that the transcript was already there and they proceeded, they weren't dismissed or anything? Yes. So the affidavit that was filed with the petition doesn't cite any cases. There are two cases cited in her motion for reconsideration, and both those cases were appeals of post-conviction petitions, but the claims in those petitions were barred by res judicata, and the only way to overcome that bar in those cases is to bring in evidence outside the record. So in both the cases that post-conviction appellate counsel cites to stand for the proposition that she somehow didn't need to file these transcripts, neither of those cases were decided based on transcripts. So essentially her negligence in those cases were able to go unnoticed. Is this all just one courthouse where this trial court in the 8th District Court of Appeals were? I believe the 8th District is in a different courthouse from the Justice Center. I mean it is regrettable that somebody couldn't have just picked up the phone, got the transcript, saved us all this trouble of haggling over some Ohio appellate rule and give the man an answer on the merits of his claim. It really is regrettable that the Ohio courts didn't show the initiative to just get the transcript and deal with the claim. Right. Well, I mean 9b does have a clear affirmative duty on the appellant to file the transcripts. 9b-3 says flat out shall order and shall file the transcripts. And in addition to that, obviously NAP is not very confusing. It says in there there is a clear unmistakable duty under Ohio law for the appellant to file the transcripts there.  As I understand this record, there is no dispute that the transcript existed. Is that correct? Yes, Your Honor. It existed. It was real. It was someplace within the files of the state of Ohio judicial system. Right? Right. Okay. It just wasn't in the right place. Exactly. So what you had is a group of lazy judges who didn't understand, who didn't take the time to find out where the transcript was actually in real life and say we want to see it. Isn't that what this boils down to? Well, no, Your Honor, because the judges don't have that affirmative responsibility to make sure that the transcripts are- What is the responsibility of a judge when he's sitting there and part of the record that he needs is not before him, but he knows it exists? Can he just sit there and wait and say it's not my job to get it, either you produce it for me or you're out of luck when all he had to do was find out where it was? Have you ever heard of a judge adjourning a matter to get more documents? No, Your Honor. I don't doubt that it happened. I suppose we could call this the lazy judge case. Right. Would that be a wrong appellation? Well, Your Honor, the only reason I think it would be wrong is because of the duty that the appellant has under the rules. The only reason I think that would be incorrect is because the appellant has the duty to make sure the transcript gets to those judges. And if the appellant doesn't fulfill his duty and the judge knows he can fill that hole by making a phone call, I mean, you know, Sherlock Holmes had all kinds of fancy titles. If he'd written about this case, he would have called it the case of the lazy judges. Wouldn't he? Perhaps. He wouldn't be out of line. Right. Well, Your Honor, I mean, I guess I just go back to 9B. Really, the reviewing court did not have that transcript which the appellant was required to file, and so they could not pass upon the assigned errors in the post-conviction appeal. The appellant did not file it within the record of his case in the court of appeals. But it was in his collateral case in the court of appeals. But it was there. It just was in the file of a different case. Right. Is that right? Am I wrong in that? I believe so. If it was filed in the direct appeal, then yes. Well, it was in the file of the direct appeal. Right. Well, Your Honor, I guess even if this was the case of the lazy judges, there isn't cause and prejudice sufficient to excuse the default in this situation because there is no constitutional right to counsel at a post-conviction appellate proceeding. So while I think it's clear that 9B is firmly established and regularly followed, the attorney's failure to furnish the transcripts here could not constitute cause under federal law. So did the trial court have a duty to get the transcript? No, Your Honor. Not for the appeal of a post-conviction petition? No, for the trial court review. Did the trial court under the statute have a duty to get the transcript? I believe they had a duty to review it. I suppose that if that also means that they need to furnish it, I'm not sure. But the statute is not clear about providing them a responsibility to physically procure it. It just says that they need to review that transcript. Let me ask you this question, counsel. If we should affirm the decision and hold that he's out of luck, that the transcript wasn't filed within the collateral, does he have a cause of action against his lawyer for malpractice? He does not because he didn't have a constitutional right to counsel in a post-conviction appellate proceeding, which is where it is. When he was before the Ohio judge on the collateral, was he pro se? He was not. No, he had counsel. What? No, he was not. He had counsel. He had counsel. And that counsel had the responsibility to file a complete record, right? One would assume, yes. But the petitioner in that situation bears the risks of their attorney in that situation. I'm sorry. I'm missing you. I'm suggesting that it's a principal agent relationship between the attorney and the client. And U.S. Supreme Court law has said that the petitioner in those types of situations, for example, this post-conviction appellate proceeding where there is no right to counsel, that petitioner has to bear the risk of an attorney error or attorney's negligence. You're saying because there's no constitutional right to counsel, he takes the risk of a bad lawyer. That's what the clearly established federal law says, yes. So the lawyer can screw up and there's nothing he can do about it. Well, Your Honor, had it been the first occasion to hear this claim, then there would be a constitutional issue. But since it was not, none of the exceptions apply. Does his lawyer have a guilty conscience? Perhaps. For failure to see that the record was fought? Would you say that lawyer has a guilty conscience? Yes, Your Honor. He goes around saying to himself, well, I screwed up, but ha-ha, he can't sue me because he wasn't obligated to have me. I'd also just like to quickly point out opposing counsel mentioned Martinez being about equity, and it certainly is. And, you know, obviously it stands for this exception regarding initial review in a collateral proceeding of this ineffective assistance of trial counsel claim. But that equity extends, again, to that first opportunity. And in this situation, Mr. Anumar did receive that first opportunity when his petition for post-conviction relief in the trial court was reviewed on the merits and dismissed. What if these phone records showed that rather than the phone being up in the tower ringing while no one was there, it was being – calls were being made from it, calls were being received from it, texts were coming from it, etc.? I mean, what if all of that evidence is there in that phone? Well, Your Honor, I think some of that evidence was there in that phone, but it was not exculpatory and it was not, you know, kind of as strong as appellant would make it seem. And the trial court did address that, stating that – One of the main witnesses said that he gave me his phone before he left and asked me to call it, and when I called it, it was up in the tower ringing. I mean, that was the strong evidence that he had left and he had planned, and that was going to be – you know, he was going to show that he was still at work because his phone was up there. So wouldn't this refute that if there's evidence of real conversations on the phone and calls coming in and out, being answered, texting made? Right. Well, it could certainly address, you know, maybe the impeachment of some witnesses, but it does not – it doesn't eliminate the fact that there were full opportunities for him to commit the crime. And as the trial court noted, and the Eighth Appellate District, even though it did not have the trial transcript, it did delve into the phone records it received and just briefly commented on them. And it pointed out that none of these records of text messages or calls prevents the appellant from committing the crime because, you know, presumably as we all know, people can multitask with their phones and it's possible. But it removes a key piece of evidence, specifically the testimony that he gave the phone to this person to set it up to be an alibi while he left. I mean, it totally undermines that. Well, Your Honor, the trial court's dismissal of the petition for post-conviction relief was an abuse of discretion standard as to whether or not it was reasonable for them to find that there was manifest evidence for the claim. And there absolutely was, given the other portions of evidence that he was, you know, gone from work, handing his shell casings to a neighbor, etc., etc. There was quite enough evidence there that, you know, both the state courts found that the evidence was there for the conviction. My time has run. All right. Thank you for your argument. We'll hear rebuttal. Thank you, Your Honor. To Your Honor's point about Martinez, that there is no right to counsel at an initial stage proceeding either, but the Supreme Court did recognize that there was an exception. And while a narrow exception, the court did rely primarily on the equities. And I will point to page 6 of my reply brief in which the court said that equity may demand that a federal habeas court hear an ineffective assistance of counsel claim even if it might be procedurally defaulted. The theme of that is that we want to be fair to claims when the lawyer makes a mistake. And in this case, as the court is struggling with, from what I understand from the questions, is whether this was actually a mistake and about what was going on with these transcripts. I mean, to Judge Cohn's point, that these transcripts were actually prepared. This wasn't about just failing to request them. This was about the actual problematic nature of the physical location of the actual transcripts. This is a very technical and a very narrow problem, and that's why it requires a narrow solution, which is a narrow exception or an extension of Martinez. I don't know if that's so narrow. I mean, it's a pretty significant thing. Martinez was a pretty significant thing. It was. Expanding it now. Okay, your lawyer can screw up twice in post-conviction proceedings now. I mean, that's asking a lot. Well, I asked this court to consider the facts of this case, which is that Mr. O'Nunwar made significant, extraordinary efforts to try to comply with the rule. While he failed to furnish the transcripts and the appeal was dismissed, his lawyer filed a motion to reconsider detailing cases and her good faith belief that this was not an issue. Then, after that was denied and the Ohio Supreme Court denied that, Mr. O'Nunwar filed a pro se motion under Ohio Appellate Rule 26B, which is an ineffective assistance of appellate counsel. Now, Ohio has that rule. It's not recognized in most other states. It's not recognized as a rule under the federal appellate rules, but Ohio has a rule. It's Ohio Rule 26B, which says that you can raise an ineffective assistance of appellate counsel. He tried to avail himself of that. Therefore, he's made every effort to try to rectify this technical and somewhat confusing problem with the transcripts. The state courts gave him no relief. We are now looking to this court to assist us so that he can have a merits review so that someone can hear these claims because these phone records are substantial, and they go to show that he did not commit this crime, that he was provided the ineffective assistance of counsel, and that there are significant other issues that do not justify this man, who was 22 years old at the time of this crime, spend his entire life in Ohio prison without the possibility of parole. Therefore, we ask this court to vacate the order denying the habeas motion and remand. Unless there are other questions, thank you. Very well. Thank you for your arguments and your briefing, both of you. Case to be submitted. Clerk may call the next case. Case number 16, 4165.